```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

BUTCHER                                    CIVIL ACTION

VERSUS                                     NO: 07-8136

SUPERIOR OFFSHORE                          SECTION: R(5)
INTERNATIONAL, LLC
```

**ORDER**

Before the Court is defendant Superior Offshore International, LLC's motion for summary judgment.  For the following reasons, defendant's motion is GRANTED.

**I.  Background**

Defendant Superior Offshore International, LLC ("Superior") hired plaintiff Noel Butcher to pressure blast and paint several offshore platforms owned by third-party, Marlin Energy Offshore, LLC.  To transport and house plaintiff, the other members of Superior's blasting/painting crew, and their equipment, Superior chartered the lift boat D/B MAGGIE (the "MAGGIE") from third-party defendant Triumph Marine.

Plaintiff spent roughly three weeks aboard the MAGGIE while he did restoration work on the Marlin platforms.  During that time, plaintiff ate, slept and attended safety meetings on board the MAGGIE.  Plaintiff also performed some incidental work onboard the MAGGIE related to his platform work.  Plaintiff swept sand off the MAGGIE's deck left by the blasting/painting equipment.  When he was not working on the platforms himself, plaintiff sometimes filled the paint gun reservoirs (called "blast pots") and checked the blast compressors, both of which remained on the deck of the MAGGIE.  Plaintiff also loaded, unloaded and stored equipment on deck, and put down the walkway between the MAGGIE and the offshore platform.  Subject to these exceptions, however, the bulk of plaintiff's work, consisting of sand-blasting corrosion off platforms and then re-coating them, took place on the platforms themselves, not on the MAGGIE.  By the same token, the MAGGIE's crew did not assist the Superior crew with blasting or painting, except to operate the boat's crane to help load and unload heavy equipment.

After "three weeks and a day" on the MAGGIE, plaintiff was injured as he worked with the MAGGIE's crane operator to lower a

"Spider" onto a platform.[1]  The crane operator allegedly

neglected to signal plaintiff that the crane's "stinger cable"

had snagged.  As a result, plaintiff was jerked forward, causing

him to injure his back.  Plaintiff sued Superior in the Eastern

District of Louisiana on November 7, 2007, asserting claims under

the Jones Act and the general maritime law.  Superior filed a

third-party complaint against Triumph Marine on November 28,

2007.  Superior now moves to dismiss all claims against it on

summary judgment.

**II.   Summary Judgment Standard**

Summary judgment is appropriate when there are no genuine

issues as to any material facts, and the moving party is entitled

to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court

must be satisfied that no reasonable trier of fact could find for

the nonmoving party or, in other words, "that the evidence

favoring the nonmoving party is insufficient to enable a

reasonable jury to return a verdict in her favor."  *Lavespere v.*

*Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.

1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

---

[1] Spiders are "elevator-like lifts or scaffolds, attachable
to the platforms and used by the blasters/painters for reaching
the underneath portions of the platforms for blasting/painting
purposes."  (R. Doc. 31 at 3 fn. 9.)

(1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**III.  Analysis**

   *i.   Jones Act*

Plaintiff's Jones Act claim turns on whether plaintiff qualifies as a "seaman" under that statute. "The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment,'" *Chandris, Inc. v. Latis*, 515 U.S. 347, 354 (1995)(*citing* 46 U.S.C. § 688).  That term is not defined in the Jones Act, but not every "maritime worker on a ship at sea...is automatically a member of the crew of the vessel

within the meaning of the statutory terms." *Id.* at 363.  To

achieve status as a seaman, a party must show:  (1) that the

employee's duties contributed to the function of a navigable

vessel or the accomplishment of its mission; and (2) that the

claimant had a connection to a vessel in navigation (or to an

identifiable group of vessels) that was substantial in terms of

both its duration and its nature.  *Id.* at 368.  The purpose of

this test is to "separate the sea-based maritime employees who

are entitled to Jones Act protection from those land based

workers who have only a transitory or sporadic connection to a

vessel in navigation, and therefore whose employment does not

regularly expose them to the perils of the sea."  *Id.*

Whether a person is a seaman is ordinarily a question of

fact for the jury.  *Ellender v. Kiva Const. & Engin'g, Inc.*, 909

F.2d 803, 805 (5th Cir. 1990).  Summary judgment is appropriate,

however, when "the facts establish [the lack of seaman status]

beyond a question as a matter of law," and no reasonable

evidentiary basis exists to support a jury finding that the

injured person is a seaman.  *Id.* (*quoting Barrett v. Chevron USA,*

*Inc.*, 781 F.2d 1067, 1074 (5th Cir. 1984)(other citations

omitted)).

To qualify for seaman status, plaintiff must first show that

he contributed to the function or mission of the MAGGIE.

*Chandris*, 515 U.S. at 368.  The Court finds that there is a genuine issue of fact on this issue.  In *Wilander v. McDermott Internat'l, Inc.*, 887 F.2d 88, 90 (5th Cir. 1989), *aff'd* 498 U.S. 337 (1991), the Fifth Circuit upheld the seaman status of a paint foreman that "direct[ed] the sandblasting and painting of fixed platforms" from a vessel.  The court stated that the "vessel functioned as a paint boat," and, therefore, "plaintiff's duties contributed to the function of the vessel."  *Id. See Also Bolden v. Offshore Express, Inc.*, 980 F.2d 1445 (5th Cir. 1992)(per curiam)(holding that painter/sandblaster contributed to the function of a paint boat). *Cf. Nolan v. Coating Specialists, Inc.*, 422 F.2d 377 (5th Cir. 1970)(per curiam)(holding that duties of a sandblaster "could be said to contribute to the mission" of a painting/sandblasting vessel even though all his work was done on platforms).  Here, plaintiff likewise asserts that the MAGGIE functioned as a blasting and painting vessel, and he offers testimony that supports this claim.  (R. Doc. 31-2 at 47, R. Doc. 31-3.)  Plaintiff states that the MAGGIE was outfitted with blasting and painting equipment, carried a blasting and painting crew, and that although painting and blasting occurred only on the platforms, hoses used to sandblast and paint remained attached to equipment onboard the MAGGIE at all times. (*Id.*)  Further, if the MAGGIE is a "paint boat," then

plaintiff's duties - which consisted primarily of blasting and painting offshore platforms - clearly contributed to its mission. Defendant, for its part, claims that the MAGGIE is a "lift boat" or "jack-up vessel," the mission of which is to provide a "stationary work platform and/or living quarters to support crews working on offshore oil platforms."  But defendant has not submitted any evidence that disputes the plaintiff's characterization of the MAGGIE, or that establishes its own. Consequently, the Court finds that plaintiff has met his burden to show that a genuine issue of fact exists as to whether plaintiff's blasting and painting duties contributed to the mission of the MAGGIE.

Contributing to the mission of the MAGGIE is not enough to gain seaman status, however.  Plaintiff must also show a connection to the MAGGIE that is substantial in both nature and duration.  *Chandris*, 515 U.S. at 368.  To determine the temporal element, the Supreme Court has adopted a rule of thumb:  "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at 371.  In *Wilander,* 887 F.2d at 90, the Fifth Circuit held that a paint foreman met the duration requirement because he performed the majority of his work actually onboard the vessel.  Plaintiff, by contrast, "admittedly

performed the bulk of his tasks on the platform." *Bolden v.*

*Offshore Express, Inc.*, 980 F.2d 1445 (5th Cir. 1992)(per

curium)(holding that paint/sandblaster had not shown a

substantial connection to a paint boat because most of his work

was performed on platforms).  Plaintiff ate and slept onboard the

MAGGIE, but plaintiff cannot claim time spent sleeping or eating

in this analysis, because this time was not spent "in the service

of a vessel in navigation."  *See, e.g., Hufnagel v. Omega Service*

*Indust., Inc.*, 182 F.3d 340, 347 (5th Cir. 1999)(fact that

plaintiff "ate, slept, and spent time" on vessel not considered

in substantial connection analysis); *Pearson v. Offshore*

*Specialty Fabricators, Inc.*, No. 91-3350, 1992 WL 300826 (E.D.La.

10/8/1992)(plaintiff did not perform a substantial amount of work

onboard the vessel even though he ate and slept there).

Moreover, even including plaintiff's compensated meal breaks,

plaintiff spent only three hours of his twelve to eighteen hour

work shifts onboard the MAGGIE.  This consisted of an hour and a

half safety meeting every morning, two fifteen minute breaks and

a one hour lunch break.  (R. Doc. 24-6 at 25-39.) This puts

plaintiff short of the 30 percent mark, a fact that plaintiff

concedes in his statement of uncontested facts. (*See* R. Doc. 31-

2)("Plaintiff spent approximately one-fourth of his paid working

hours onboard the MAGGIE.")

The 30 percent rule is "no more than a guideline established
by years of experience, and departure from it will certainly
justified in appropriate cases." *Chandris*, 515 U.S. at 371.  A
party who fails to meet the 30 percent threshold, however, must
show circumstances "that justif[y] an exceptional departure from
the 30 percent test." *Roberts v. Cardinal Services, Inc.*, 266
F.3d 368, 377 (5th Cir. 2001).  For example, in *Roberts*, the
Fifth Circuit observed that Louisiana courts have recognized an
exception to the 30 percent rule for divers, because they "are
continuously subject to the perils of the sea and engaged in
classical seaman's work."  266 F.3d at 378.  Plaintiff presses
his exposure to the perils of the sea, including being forced to
return to land because of rough weather several times while on
the MAGGIE, as grounds for finding his connection to the MAGGIE
substantial.  As plaintiff acknowledges, however, exposure to
peril at sea is not determinative of seaman status.  *See St.
Romain v. Indust. Fab. & Repair Serv.*, 203 F.3d 376, 380 (5th
Cir. 2000).  Moreover, in *Roberts*, the court distinguished
between occupations such as diving, that are "inherently maritime
because it cannot be done on land," and occupations such as
plaintiff's, that "like so many offshore field occupations" was
"developed in land work and transposed to a maritime setting."
266 F.3d at 378 (*quoting Little v. Amoco Prod. Co.*, 734 So.2d

9

933, 938 (La. Ct. App. 1999)).  Plaintiff simply has not shown

facts that warrant departing from the 30 percent rule here.

Plaintiff relies on this Court's decision in *Lockhart ex rel*

*Lockhart v. Applied Coating Services, Inc.*, No. 05-1630, 2005 WL

1574208 (E.D.La 6/24/05), for the proposition that plaintiff's

connection to the MAGGIE was substantial in nature as a matter of

law, but *Lockhart* is distinguishable from this case.  *Lockhart*

dealt with whether a plaintiff had improperly joined a Jones Act

claim to avoid removal.  Consequently, the Court had to determine

only whether the defendant met the "heavy burden" of showing that

plaintiff had no possibility of establishing a Jones Act claim.

*Id.* at *1-2.  Further, there were disputed issues as to the

nature and duration of plaintiff's connection to the vessel.  *Id.*

Here, plaintiff has admitted that he spent only one-fourth of his

time onboard the MAGGIE, a fact that makes him ineligible for

seaman status.

Because plaintiff has failed to show a substantial

connection to the MAGGIE, plaintiff is not a seaman and defendant

is entitled to summary judgment on plaintiff's Jones Act claim.

   *ii.  Unseaworthiness*

Plaintiff has also brought an unseaworthiness claim under

the general maritime law.  The warranty of seaworthiness is a

duty that is generally owed to those employees covered under the

Jones Act.  *See* 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 7-1 (2d ed. 1994).  For those workers who "fall into the crack between seamen and longshore workers," however, the *Sieracki* doctrine and the warranty of seaworthiness "still rule[] the sea."  *Id.* § 6-27 at 347.  In *Seas Shipping v. Sieracki*, 328 U.S. 85, 99 (1946), the Supreme Court extended the remedy of unseaworthiness to longshoreman "doing a seaman's work and incurring a seaman's hazards."  The *Sieracki* doctrine was expanded by the Supreme Court in *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 413 (1953), to include independent contractors who were subject to the same dangers as those crew members directly employed by the vessel.  The 1972 Amendments to the Longshoreman's and Harbor Worker's Compensation Act eliminated the unseaworthiness remedy for any employee covered under the LHWCA, but the Fifth Circuit has held that persons excluded from the LHWCA's coverage may still qualify as *Sieracki* seaman for the warranty of unseaworthiness.  *See Green v. Vermillion Corp.*, 144 F.3d 332, 337 (5th Cir. 1998); *Cormier v. Oceanic Contractors, Inc.*, 696 F.2d 1112m 1112 (5th Cir. 1983); *Aparicio v. Swan Lake*, 643 F.2d 1109, 1117 (5th Cir. 1981).

To qualify as a *Sieracki* seaman, plaintiff must show that he was "doing a seaman's work."  *Sieracki*, 328 U.S. at 99.  Whether

plaintiff could meet this burden is debatable.[2]  Regardless,

plaintiffs claim must be dismissed because, as a time-charterer,

Superior is not the proper defendant in an unseaworthiness claim.

"The appropriate defendant in an unseaworthiness claim is the

person who had operational control of the ship at the time the

condition was created or the accident occurred."  Schoenbaum,

*supra*, § 6-25.  This is usually the shipowner, but a charterer

may be liable in some circumstances.  *Id. See also Forrestor v.*

*Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993).

Whether a charterer is liable for unseaworthiness depends on

the type of charter.  In a bareboat charter or "demise charter,

the vessel owner transfers full possession and control to the

charterer, who in turn furnishes the crew and maintenance for the

vessel."  *Forrestor*, 11 F.3d at 1215.  The demise charterer acts

as the owner *pro hac vice* and is liable for the unseaworthiness

of the vessel.  *Id.*

By contrast, a time-charter is a non-demise charter, because

the charter "does not vest nearly the same control in its

charterer.  A time-charter only entitles the charterer to the use

---

[2] For example, in *Law v. Sea Drill Corp.*, 510 F.2d 242, 248
fn. 6 (5th Cir. 1975), the Fifth Circuit assumed, in *dicta*, that
a platform worker injured while unloading equipment off a vessel
could qualify as a *Sieracki* seaman, but observed that the court's
opinion in *In re Dearborn v. Marine Service, Inc.*, 499 F.2d 263
(5th Cir. 1974), called that assumption into doubt.

of the vessel for a specified time.  Although the time-charterer

does direct the destinations of the vessel, he does not control

the details of vessel operation required to reach those

destinations," and is not liable for the ship's unseaworthiness.

*Id.*

Here, defendant has entered into a typical time-charter

agreement with Triumph Marine.  The charter was temporary in

duration, and it is undisputed that the MAGGIE had its own crew

who operated the MAGGIE and its machinery at all times.

Defendant controlled the MAGGIE's destinations based on the

platforms defendant contracted to service and necessarily

dictated the amount of time the MAGGIE would spend at each

location, but this does not establish control over the MAGGIE

sufficient to impose liability for unseaworthiness.  *See Id.*

(stating that "the time-charter... direct[s] the destinations of

the vessel.")  Rather, these are standard incidents of any time-

charter agreement.  *Id.*

Plaintiff argues that defendant had "operational control"

over the MAGGIE, because "Superior controlled the number of

blasting/painting crewmembers aboard the MAGGIE, and in

accordance with the MAGGIE's blasting/painting mission, Superior

controlled the MAGGIE's daily blasting/painting operations."

Plaintiff mistakenly conflates the MAGGIE's crew and Superior's

employees, equating control over the latter with the former.  The

MAGGIE had its own crew, separate from defendant's employees;

these crewmembers maintained and operated the vessel.  That

defendant maintained control over the number and activities of

its own employees does not translate into control over the

MAGGIE.  Because defendant was not a demise charterer, it did not

owe a duty of seaworthiness to plaintiff, and plaintiff's claim

is dismissed.

## IV.  Conclusion

For the reasons stated above, defendant's motion for summary

judgment is GRANTED.


New Orleans, Louisiana, this 2nd day of December, 2008.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

14